# MASTER CONTRACT

between

## UNITED STATES MARITIME ALLIANCE, LTD.
(For and on Behalf of Management)

and

## INTERNATIONAL LONGSHOREMEN'S ASSOCIATION, AFL-CIO

(For and on Behalf of Itself and Each of Its Affiliated Districts and Locals Representing Longshoremen, Clerks, Checkers and Maintenance Employees Working On Ships and Terminals in Ports on the East and Gulf Coasts of the United States)

Effective October 1, 2004 For The Six-Year Term Expiring on September 30, 2010



# TABLE OF CONTENTS

*Page*

Preamble . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
Article I.     Scope of Agreement  . . . . . . . . . . . . . . . . . . . . . . . . 1
    Section 1.    Management  . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
    Section 2.    Recognition  . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    Section 3.    Complete Labor Agreement  . . . . . . . . . . . . . . 2
    Section 4.    Local Bargaining  . . . . . . . . . . . . . . . . . . . . . . . 2

Article II.    Wages  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    Section 1.    Wage Increases - Current Employees  . . . . . . . . 2
    Section 2.    New Employees  . . . . . . . . . . . . . . . . . . . . . . . . 3

Article III.   Hours of Work  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
    Section 1.    Working Days  . . . . . . . . . . . . . . . . . . . . . . . . . 3
    Section 2.    Nights, Weekends, and Holidays  . . . . . . . . . . . 3
    Section 3.    Meal Hours  . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Article IV.    Local Fringe Benefit Contributions . . . . . . . . . . . . . 4
    Section 1.    Contributions  . . . . . . . . . . . . . . . . . . . . . . . . . . 4
    Section 2.    Guarantee of Contributions  . . . . . . . . . . . . . . . 4
    Section 3.    Allocation of Contributions  . . . . . . . . . . . . . . . 4
    Section 4.    Limitation on Contributions  . . . . . . . . . . . . . . . 5

Article V.     Utilization of Work Force  . . . . . . . . . . . . . . . . . . . . 5
    Section 1.    New Employees  . . . . . . . . . . . . . . . . . . . . . . . . 5
    Section 2.    Training  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
    Section 3.    Flex-Time  . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
              (a) Terminals  . . . . . . . . . . . . . . . . . . . . . . . . . 6
              (b) Ship Operations  . . . . . . . . . . . . . . . . . . . . 6
    Section 4.    Gang Size  . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
              (a) Longshore Gang  . . . . . . . . . . . . . . . . . . . . 6
              (b) Feeder Barge Gang  . . . . . . . . . . . . . . . . . . 7
              (c) Small Boat Gang  . . . . . . . . . . . . . . . . . . . 7
    Section 5.    Staffing  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
              (a) Checker  . . . . . . . . . . . . . . . . . . . . . . . . . . 7
              (b) LTL Staffing  . . . . . . . . . . . . . . . . . . . . . . . 7
    Section 6.    Local Bargaining  . . . . . . . . . . . . . . . . . . . . . . . 7

|  | | *Page* |
|---|---|---|
| Article VI. | Drug and Alcohol Programs | 7 |
| Section 1. | Local Plans | 7 |
| Section 2. | Reinstatement | 8 |
| Section 3. | Fresh Start After First Offense | 9 |
| | | |
| Article VII. | ILA Jurisdiction Generally | 9 |
| Section 1. | Containerization Agreement | 9 |
| Section 2. | Rules On Containers | 9 |
| Section 3. | Maine to Texas | 9 |
| Section 4. | Jurisdiction Committee | 9 |
| | (a) Fact Finding | 9 |
| | (b) Labor Adjustor System | 10 |
| Section 5. | Supervision and Management | 10 |
| Section 6. | Reefer Containers | 10 |
| Section 7. | Port Authorities | 10 |
| Section 8. | Marine Terminal Work | 10 |
| Section 9. | Work Opportunities | 11 |
| Section 10. | Space Charters | 11 |
| | | |
| Article VIII. | ILA Jurisdiction Over Clerical Work | 11 |
| Section 1. | Clerical Work | 11 |
| Section 2. | Guidelines | 12 |
| | (a) Framework | 12 |
| | (b) Statement of Principle | 12 |
| | (c) No Waiver | 12 |
| Section 3. | Glossary of Terms | 12 |
| | (a) Receiving and Delivery | 12 |
| | (b) Hatchchecking | 13 |
| | (c) Prestow and Plan Clerking | 13 |
| | (d) Timekeeping | 13 |
| | (e) Location and Yard Work | 13 |
| | (f) Demurrage Recording | 13 |
| | | |
| Article IX. | ILA Jurisdiction Over Maintenance and Repair Work | 14 |
| Section 1. | Maintenance and Repair Work | 14 |
| Section 2. | Major Damaged Equipment | 14 |

|  |  | *Page* |
|---|---|---|
| Section 3. | Determination Procedure | 15 |
| Section 4. | Grievance and Audit | 15 |

Article X. New Technology .......................... 16
    Section 1.    Impact on Employees ................... 16
    Section 2.    Notification ......................... 16
    Section 3.    Grievance .......................... 17
    Section 4.    Time Limits ........................ 17

Article XI. Container Royalties ....................... 17
    Section 1.    First and Third Container Royalties ........ 17
    Section 2.    Second Container Royalty ............... 18
    Section 3.    Limitation on Supplemental Wage Benefit .. 18
    Section 4.    Container Royalty Cap .................. 19
        (a) Cap Levels ....................... 19
        (b) Port Benchmarks ................... 19
        (c) Distribution of Cap Excess ............ 20
        (d) Benchmark Payments in
            Excess of Cap Level ................ 20
        (e) Adjustment of Benchmarks ........... 20
        (f) Limitation on Use of Cap
            Refund to Local Escrow Fund ......... 21
        (g) Interest Charges .................... 21
    Section 5.    Carrier-ILA Container Freight Station
            Trust Fund .......................... 22
    Section 6.    Carrier-ILA Container Royalty Fund ....... 22

Article XII. MILA .................................. 23
    Section 1.    Management-ILA Managed Health Care
            Trust Fund .......................... 23
    Section 2.    Funding ............................. 23
        (a) CR-4 Tonnage Contributions .......... 23
        (b) Second Container Royalty Contributions . 23
        (c) Hourly Contributions ................ 24
    Section 3.    Second Container Royalty Contributions .... 24
    Section 4.    Eligibility of Active Employees ........... 24
    Section 5.    Eligibility of Retirees ................... 25
    Section 6.    Plan Amendments ..................... 26
    Section 7.    Creation of Core Plan ................... 27

|  |  | *Page* |
|---|---|---|
| Article XIII. | Grievance Procedure | 27 |
| Section 1. | Local Level | 27 |
| Section 2. | Appellate Level | 27 |
| Section 3. | Appeals From a Decision of the LIGC | 27 |
| Section 4. | Appeals Form | 28 |
| Section 5. | Industry Appellate Committee | 28 |
|  | (a) Number of IAC Members | 28 |
|  | (b) Co-Chairmen | 28 |
|  | (c) Telephonic Notice | 28 |
|  | (d) Quorum | 28 |
|  | (e) Majority Vote | 28 |
|  | (f) Multi-Port Charges | 28 |
|  | (g) Failure to Appear | 28 |
| Section 6. | Arbitration | 28 |
|  | (a) Panel of Arbitrators | 28 |
|  | (b) Selection of Arbitrator | 29 |
|  | (c) Selection System | 29 |
|  | (d) Expedited Arbitration | 29 |
|  | (e) Failure to Appear | 30 |
|  | (f) Award | 30 |
|  | (g) Right to Strike | 30 |
| Section 7. | Regular IAC Meetings | 30 |
| Section 8. | Industry Resource Committee | 31 |
| Section 9. | Disputes Among Fund Trustees | 31 |
| Article XIV. | Accommodations | 31 |
| Section 1. | Existing Accommodations | 31 |
| Section 2. | Future Accommodations | 32 |
| Article XV. | No-Strike Clause | 33 |
| Section 1. | No Strikes or Lockouts | 33 |
| Section 2. | Bona Fide Picket Line | 33 |
| Article XVI. | Term of Agreement | 33 |
| Article XVII. | Subscription and Signatories | 33 |
| Section 1. | Refusal to Work | 33 |

|  | | *Page* |
|---|---|---|
| Section 2. | Non-Subscribers | 33 |
| Section 3. | Fringe Benefit Assessment | 34 |

Article XVIII. Miscellaneous ........................... 34
    Section 1. Headings ............................ 34
    Section 2. Severability ......................... 34
    Section 3. Ratification ......................... 34
    Section 4. Amendments .......................... 35

Appendix A. Containerization Agreement ................ 36

Appendix B. Management-ILA Rules On Containers (As amended by Agreement of May 27, 1980) .......................... 39

Appendix C. Letter Agreement Re: ILA Jurisdiction ...................... 43

Appendix D. Major Damage Criteria for Containers and Chassis ................. 45

Appendix E. Stein Award ........................... 50

Appendix F. Puerto Rican Trade Accommodation for Horizon Lines and Trailer Bridge, Inc. dated December 23, 2003 and an amendment dated March 31, 2004 to the December 23, 2003 Agreement .......... 52

Appendix G. Letter Regarding New Technology ........... 56

# PREAMBLE

**THIS COLLECTIVE BARGAINING AGREEMENT** made and entered into on the 28th day of June, 2004, by and between **UNITED STATES MARITIME ALLIANCE, LTD. ("USMX")** for and on behalf of its members and any stevedores, marine terminal operators and carriers which may hereafter become members of USMX or which may hereafter subscribe to this Agreement (hereinafter sometimes collectively referred to as "Management") and the **INTERNATIONAL LONGSHOREMEN'S ASSOCIATION, AFL-CIO ("ILA")** for and on behalf of itself and each of its affiliated districts and locals representing longshoremen, clerks, checkers, and maintenance employees working on ships and terminals in ports on the East and Gulf Coasts of the United States constitutes the Master Contract establishing the terms and conditions of employment for longshoremen, clerks, checkers, and maintenance employees employed in container and roll-on/roll-off ("ro-ro") operations at ports on the East and Gulf Coasts of the United States.

# ARTICLE I
# SCOPE OF AGREEMENT

**Section 1.  Management.**

The multiemployer Management group bound to the Master Contract consists of the carriers, stevedores, marine terminal operators, and port associations that are members of USMX; the carriers, stevedores, and marine terminal operators that are members of the port associations that are members of USMX; and the carriers, stevedores, and marine terminal operators that hereafter become members of USMX or hereafter subscribe to this Master Contract as well as those carriers and other employers bound hereto by operation of law.

**Section 2.      Recognition.**
Management recognizes the ILA as the exclusive bargaining representative of longshoremen, clerks, checkers, and maintenance employees who are employed on ships and terminals in all ports on the East and Gulf Coasts of the United States, inclusive from Maine to Texas, and the ILA recognizes USMX as the exclusive employer representative in such ports on Master Contract issues.

**Section 3.      Complete Labor Agreement.**
This Master Contract is a full and complete agreement on all Master Contract issues relating to the employment of longshore employees on container and ro-ro vessels and container and ro-ro terminals in all ports from Maine to Texas at which ships of USMX carriers and carriers that are subscribers to this Master Contract may call. This Master Contract as supplemented by local bargaining constitutes a complete and operative labor agreement.

**Section 4.      Local Bargaining.**
The port associations which are bound by this Master Contract will engage in local negotiations on those bargaining subjects left open to local negotiations by USMX and ILA. Local agreements must be consistent with and will supplement the terms and conditions of the Master Contract in the local ports covered by this Master Contract.

# ARTICLE II
# WAGES

**Section 1.      Wage Increases - Current Employees.**
(a)     Employees whose straight-time basic wage rate in effect on September 30, 2004, is more than $21.00 per hour shall receive the following increases in their straight-time basic wage rate:

| **Effective Date** | **Increase** |
| --- | --- |
| October 1, 2004 | $1.00 per hour |
| October 1, 2006 | $1.00 per hour |
| October 1, 2008 | $1.00 per hour |
| October 1, 2009 | $1.00 per hour |

(b)   Employees whose straight-time basic wage rate in effect on September 30, 2004, is $21.00 per hour or less shall receive the following increases in their straight-time basic wage rate:

| **Effective Date** | **Increase** |
|---|---|
| October 1, 2004 | $2.00 per hour |
| October 1, 2006 | $2.00 per hour |
| October 1, 2008 | $1.50 per hour |
| October 1, 2009 | $1.50 per hour |

**Section 2.   New Employees.**

The starting straight-time basic wage rate for new employees who enter the industry on or after October 1, 2004, shall be $16.00 per hour. New employees shall include any former employee who did not work at least one (1) hour under the prior Master Contract during the period from October 1, 2000, through and including September 30, 2004. New employees hired during the term of this Master Contract shall be entitled to receive the increases set forth in Article II, Section 1(b) of this Master Contract that go into effect after the date of their hire.

# ARTICLE III
# HOURS OF WORK

**Section 1.   Working Days.**

The regular or normal working day shall consist of eight (8) hours from 8:00 A.M. to 12:00 Noon and from 1:00 P.M. to 5:00 P.M., and the regular or normal working week shall consist of forty (40) hours made up of five (5) regular or normal working days from Monday to Friday, inclusive.

**Section 2.   Nights, Weekends, and Holidays.**

Employees covered by this Master Contract when required by Management shall work Saturdays, Sundays, and legal holidays and any night during the entire seven (7) day week.

**Section 3.   Meal Hours.**

Meal hours shall be from 6:00 A.M. to 7:00 A.M., from 12:00 Noon to 1:00 P.M., from 6:00 P.M. to 7:00 P.M., and from 12:00

Midnight to 1:00 A.M. Work shall be performed during meal hours on arrival or sailing days to complete discharging or loading a hatch, or by mutual agreement of the local ILA and port association in the ports or districts covered by this Master Contract.

# ARTICLE IV
# LOCAL FRINGE BENEFIT CONTRIBUTIONS

**Section 1.** **Contributions.**

Contributions for local pension, welfare, and other employee fringe benefits shall be increased as follows:

| Effective Date | Increase |
|---|---|
| October 1, 2004 | $1.00 per hour, raising the total rate from $11.00 to $12.00 per hour, of which $5.00 per hour shall be paid to the Management-ILA Managed Health Care Trust Fund (hereinafter "MILA"). |
| October 1, 2006 | $0.50 per hour, raising the total rate from $12.00 to $12.50 per hour, of which $5.00 per hour shall be paid to MILA. |
| October 1, 2008 | $0.50 per hour raising the total rate from $12.50 to $13.00 per hour, of which $5.00 per hour shall be paid to MILA. |

**Section 2.** **Guarantee of Contributions.**

Management guarantees that during the term of this Master Contract the additional contributions made pursuant to Article IV, Section 1 of this Master Contract shall be not less than $124.4 million.

**Section 3.** **Allocation of Contributions.**

The contributions set forth in Article IV, Section 1 of this Master Contract may be allocated to fund not only pension and welfare

benefits but also any other fringe benefits as agreed to by the local ILA and port association in each of the ports or districts covered by this Master Contract, except that $5.00 per hour worked in each port or district shall be paid to MILA.

**Section 4.      Limitation on Contributions.**

No man-hour contributions other than those set forth in Article IV, Section 1 of this Master Contract shall be imposed in any port or district except existing contributions in effect on September 30, 2004, which may not be increased during the term of this Master Contract. No tonnage assessment (not in effect on the effective date of this Master Contract) shall be imposed on containerization or ro-ro operations by any local ILA or port association in any port or district covered by this Master Contract during the life of this Master Contract.

# ARTICLE V
# UTILIZATION OF WORK FORCE

**Section 1.      New Employees.**

(a)   New employees shall be required to pass a mandatory physical examination and a drug test as established by Management and the ILA after they are offered employment and before they engage in any services.

(b)   New employees shall also be required to pass ability and proficiency tests approved by Management and the ILA and shall also be required to be recertified every two (2) years in the case of equipment operators, clerical employees, and maintenance employees.

**Section 2.      Training.**

Employees who operate or otherwise handle, or are selected to operate or otherwise handle, wheeled equipment, cranes or other moving equipment or who perform maintenance or clerical work shall receive such training as may be required from time-to-time by Management and shall be subject to such recertification requirements as shall be established by Management and the ILA, including a

physical examination designed by Management and the ILA to demonstrate the employee's ability to perform the essential functions of the employee's job.

**Section 3.  Flex-Time.**

(a)  **Terminals.** Each local port or district must institute a flex-time system at waterfront terminals for the receiving and delivery of containers and chassis and for work associated with these functions with the details of flex-time to be worked out on a local basis in accordance with the following basic principles:

(i) For all hours worked before 8:00 A.M. and after 5:00 P.M., the wage rate shall be 1 and 1/4 times the straight-time basic hourly rate except on Saturdays, Sundays and holidays, when the wage rate of 1 and 1/2 times the straight-time basic hourly rate shall apply.

(ii) The minimum hourly guarantees shall begin at the time the employees begin work.

(iii) After eight (8) hours worked in any day, the overtime rate of 1 and 1/2 times the straight-time basic hourly rate shall apply.

(iv) Starting times and meal hours are local issues.

(b)  **Ship Operations.** Any port or district may implement a ship or barge operation flex-time system which shall provide for flexible starting times and shift operations. The minimum hourly guarantees shall begin at the time the employees begin work. Starting times and meal hours are local issues.

**Section 4.  Gang Size.**

(a)  **Longshore Gang.** A two-employee reduction in the total operation of the longshore gang for container and ro-ro ships went into effect on October 1, 1996, and an additional one-employee reduction went into effect on October 1, 1998. These reductions had to be made from other than drivers and/or crane operators. These reductions shall remain in effect during the term of this Master Contract.